AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )          Case No.   '24  MJ0315
)
Black Samsung Cellular Phone )
Case Number: SYS-23-09-0863 )
("Target Device") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the       Southern       District of       California      , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Bringing in unlawful alien without presentation |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ramon A. Galindo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
       telephone                    *(specify reliable electronic means).*

Date:    01/29/2024

*Judge's signature*

City and state:  San Diego, California          DANIEL E. BUTCHER, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The previously obtained download of the following property is to be searched:

    Black Samsung Cellular Phone
    Case Number: SYS-23-09-0863

    ("**Target Device**")

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 14, 2023 to September 12, 2023:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

# AFFIDAVIT

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the download of the following electronic device(s):

> Black Samsung Cellular Phone
> Case Number: SYS-23-09-0863
>
> ("**Target Device**")

the ("Target Device"), as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of David Margarito VALENCIA (D1), for bringing in unlawful alien without presentation. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.[1]

---

[1] Law enforcement previously obtained a search warrant (the prior warrant) for the same evidence requested herein. Specifically, on September 13, 2023, Judge Barbara L. Major signed the prior warrant containing the same probable cause statement as the instant warrant in case number 23MJ3336. After law enforcement obtained the prior warrant, the **Target Device** was downloaded, but due to resource constraints, the data was not analyzed and the evidence responsive to Attachment B was not retrieved in the time frame provided by the prior warrant (90 days). Law enforcement is now seeking authorization to conduct a search of the data already downloaded from the **Target Device** for evidence responsive to Attachment B. The probable cause in the instant warrant is identical to the probable cause in the prior search warrant. The seizure parameters in the Attachment B of the instant warrant also are identical as those in Attachment B of the prior warrant.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with

other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to

months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.      tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.      tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.      tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On September 12, 2023, at approximately 3:22 A.M., David Margarito VALENCIA (D1), a United States citizen, applied for admission into the United States from Mexico via the San Ysidro, California Port of Entry (SYS POE) vehicle primary lanes, as the driver and sole visible occupant of a silver 2007 Toyota Camry bearing California license plates. Upon inspection before a United States Customs and Border Protection (CBP) Officer, Defendant presented his California Driver License and said he was a United States citizen. The CBP Officer queried Defendant's information and received a computer-generated alert. Defendant and vehicle were referred to the vehicle secondary lot for further inspection.

12. Port recorded video, reviewed at a later time, shows that at approximately 3:23 A.M., a CBP Officer assigned to the vehicle secondary lot, approached the silver Toyota Camry, and instructed D1 to exit the vehicle and open the hood and trunk. The CBP Officer is shown briefly walking away while D1 exits the vehicle and manually opens the trunk, then walks back towards the hood of the vehicle. At this time, a male individual, later

identified as Roberto MAYORQUIN-Sillas (D2), is seen exiting the Toyota Camry's trunk, unbeknownst to CBP officers. D1 is then observed walking over to a table next to the vehicle and D2 is seen walking around the vehicle and standing on the opposite end of the table as D1. D1 is then seen returning to the vehicle and being released north into the United States.

13. At approximately 3:34 A.M., D2 approached a CBP Officer assigned to the exit booth of the SYS POE vehicle secondary lot, on foot. D2 told the CBP Officer that he and his wife had gotten into an argument. D2 claimed he exited his vehicle to use the restroom and when he returned, his wife was gone. The CBP Officer requested additional assistance and responding officers escorted D2 to a nearby inspection area. While CBP Officers were attempting to validate D2's story, he asked to use the restroom again. As D2 was walking towards the restroom, he attempted to abscond from the vehicle secondary lot and a brief chase ensued. D2 was apprehended and placed in handcuff restraints to be escorted to the security office for further investigation. D2 told a CBP Officer that he was going to Los Angeles, California, to work.

14. In the security office, D2's true identity was ascertained. D2 was searched by fingerprint and photograph comparison through the Integrated Automated Fingerprint Identification System (IAFIS) and the Automated Biometric Identification System (IDENT). IAFIS and IDENT returned a match to the query linking Defendant to Federal Bureau of Investigation (FBI) and Department of Homeland Security (DHS) records. DHS records identified D2 as a citizen of Mexico and a previously deported alien.

15. Further DHS records confirmed D2 is a citizen of Mexico without documents or entitlements to enter the United States. DHS records revealed D2 was ordered removed from the United States to Mexico by an Immigration Judge on or about February 22, 2001, and subsequently physically removed from the United States to Mexico on or about the same day, via Calexico, California. D2 was most recently removed from the United States

to Mexico on or about April 1, 2016, via Del Rio, Texas, pursuant to a Reinstatement of Deport Order. DHS records contain no evidence D2 has applied for or received permission from the Attorney General of the United States or his designated successor, the Secretary of the Department Homeland Security, to legally re-enter the United States.

16. Outbound record checks revealed D1's silver Toyota Camry was driven into Tijuana, Mexico from the United States via the San Ysidro Port of Entry outbound vehicle lanes on September 12, 2023, at approximately 2:50 P.M. System checks show D1 driving the silver Toyota Camry and wearing the same bright orange shirt he was seen wearing earlier that day during the vehicle secondary inspection encounter.

17. On September 13, 2023, at approximately 2:17 A.M., D1 applied for admission into the United States from Mexico via the SYS POE vehicle primary lanes, as the driver and sole visible occupant of a silver 2007 Toyota Camry, bearing California plates. Upon inspection before a CBP Officer, D1 said he was a United States citizen going to Coronado with nothing to declare from Mexico. The CBP Officer conducted queries and received a computer-generated alert. D1 and vehicle were referred to the vehicle secondary lot for further inspection.

18. In secondary, D1 was placed in handcuff restraints and escorted to the security office for further investigation.

19. The **Target Device** was discovered in D1's hand at the time of apprehension in the vehicle secondary inspection lot: **Target Device** was subsequently seized.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using

the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the extraction of data beginning on August 14, 2023, up to and including September 12, 2023, that was previously retrieved from the **Target Device** pursuant to the prior warrant and I request permission to access, search and analyze the data.

## METHODOLOGY

21.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for

acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. As addressed in Footnote 1, law enforcement obtained the prior warrant for the same evidence requested herein. After law enforcement obtained the prior warrant, the **Target Device** was downloaded, but the data was not analyzed and the evidence responsive to Attachment B was not retrieved in the time frame provided by the prior warrant (90 days).

//
//
//

## CONCLUSION

25. Based on the facts and information set forth above, there is probable cause to believe that a search of the extraction from the **Target Device** obtained pursuant to the prior warrant will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

26. The **Target Device** was seized at the time of VALENCIA's arrest, and has been securely stored since that time. The extraction of the **Target Device** was conducted pursuant to the prior warrant and has not been modified or accessed since the 90 days expired. The extraction covers the requested date range of August 14, 2023 through September 12, 2023. As such, there is probable cause to believe that such evidence continues to exist on the extraction from the **Target Device**.

27. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Ramon A. Galindo, CBP Enforcement Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 29th day of January, 2024.

_____
HON. DANIEL E. BUTCHER
United States Magistrate Judge